W. A. HATCHER, plaintiff in error, *vs.* MILLY CUTTS, defendant in error.

Where two minor children were bound as apprentices by the Ordinary of Calhoun county, and the order stated that it was made upon the written consent of the parent, and on a *habeas corpus* by the parent, there was evidence strongly indicating that the parent had been imposed upon and did not understand the purport of the writing, and the Judge awarded the children to the parent:

*Held,* That this was no abuse of the discretion of the Court.

*Habeas Corpus.* Minors. Fraudulent Judgments. Before Judge CLARKE. Calhoun Superior Court. September Term, 1870.

Milly Cutts, a negro, signed the following paper:

"GEORGIA—CALHOUN COUNTY:

"I, Milly Cutts, do hereby agree that my children may be bound out to W. A. Hatcher and W. T. Wilkerson.

"MILLY  her ⋈  CUTTS."  
mark.

Test:

"A. D.  his ⋈  HOWARD."  
mark.

Thereupon, Hatcher applied to the Ordinary of said county, in July, 1870, represented that her children, Mary, nine years old, and Aaron, three years old, had no parents in the county; (their mother being in jail, for stealing, in Sumter county;) that they had no means, and were likely to become chargeable to the county, and prayed that they be bound over to him,

as apprentices, till they were twenty-one years old, respectively. Upon the production of said consent, and proof of the facts stated in the petition, the Ordinary bound them to Hatcher, pursuant to the prayer.

In September, 1870, Milly Cutts sued out *habeas corpus* against Hatcher to regain possession of said children. He answered, setting up said consent and judgment as his justification for holding them. This consent Milly's counsel traversed.

When the cause came on for hearing, Hatcher moved to dismiss the warrant, because, by his answer, it appeared that he had custody of the children under the order of a Court having jurisdiction, etc. This motion was overruled.

Milly then testified, that in July, 1870, she was working for Hatcher at fifty cents per day, and had her five children with her; that Cutts came with a warrant from Sumter county, charging her with having stolen $600 00 from him, and was about to carry her to Sumter for trial. Before going, she agreed that Hatcher should have the care of these children till she returned, and she did not understand that she was agreeing to more than this when she signed said paper. She admitted that she left them without any food or means of support. She further said that a Mr. Ansley had taken her from jail, by standing her security, and that she had agreed to live with Cutts, her former master, and work out the stolen money, and that she wished to carry her children with her.

Cutts testified, that he had agreed to take Milly and her children and keep them while she worked out said $600, and that he would do so; that she was a good hand on a farm.

Hatcher testified, that when Milly was about to be taken away, as aforesaid, she asked him to take care of her children, and he said he would, if the Ordinary would bind them to him; that he went to the Ordinary, who said he would bind them to him if their mother consented, and wrote out said paper for her to sign; that he took the paper to her

and read it over to her, and she signed it, saying she understood it. The Court asked Hatcher what he said to her in explanation of said paper, and he said he told her it was an agreement that he should take care of her children. (It appeared that Wilkerson had the other three children.)

Howard testified, that he understood the paper, and that Milly said she did; that she said she wished Hatcher to have these children; that something was said about her returning, but he did not remember what.

The Court ordered the children to be returned to her. This, and his refusal to dismiss the writ on the said motion, are assigned as error.

VASON & DAVIS, by R. H. CLARK, for plaintiff in error.

LYON, DEGRAFFENREID & IRVIN, by Z. D. HARRISON, for defendants.

McCAY, J.

The testimony of Milly Cutts, with the admission of the defendant, in his reply to the inquiry of the Judge, pretty strongly shows that the order of the Ordinary was improperly procured. The evidence all shows that the Ordinary would not have passed the order without the consent of the mother, and the defendant admitted to the Judge what the mother testified to, on oath: that she was not informed of the contents of the paper; that, on the contrary, she was misled as to its meaning. If this be so, the order might be collaterally attacked, since it was fraudulently procured.

We are free to say that we do not think the mother in a very good condition to take care of these children, and we fear that their condition will not be bettered by delivering them to her. Still, the law leaves this with the Judge, and it is not our province to interfere with his judgment, on the facts, unless the case against his judgment be a strong one.

It must be a case of abuse of discretion to make his judgment illegal. It is only over errors of law that this Court has jurisdiction: *Starr vs. Barton,* 34 *Georgia Reports,* 99.

Judgment affirmed.